Spear, J.
The statute under which the probate judge acted, is the act of April 29, 1854, (52 Ohio Laws, 78), now appearing as section 4182, of the Revised Statutes. It is as follows:
“Section 4182. (Heir at law ; how designated.) A person of sound mind and memory may appear before the probate judge of his county, and in the presence of such judge and two disinterested *217 persons of his or her acquaintance, file a written declaration, subscribed by him, which declaration shall be attested by such disinterested persons, declaring that, as his or her free and voluntary act, he or she, did desigmate and appoint another, naming and stating the place of residence of such person specifically, to stand toward him or her in the relation of an heir at law in the event of his or her death ; thereupon the judge, if satisfied that such declarant is of sound mind and memory, and free from any restraint, shall enter that fact upon his journal, and make a complete record of such proceedings ; thenceforward the person thus designated shall be deemed and held to stand in. the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock ; the rules of inheritance shall be the same, between him and relations by blood of the declarant, as if so born ; and a certified copy of such record shall be prima facie evidence of the fact stated therein, and conclusive evidence unless impeached for actual fraud, or undue influence.1’
Counsel for plaintiffs claim that the entry and record purport to be, and in order to be valid must be, a judgment of a court; that a judgment can be rendered only by a court, and the statute contemplates that the action under it, resulting as it does in a judgment, is to be taken by a court, not by a judge ; but that the proceedings are not valid ; but are void, because not had at the office of the probate court at the county seat, the place prescribed by law for holding a court; and that being thus absolutely void, may be impeached by the plaintiffs by a proceeding for that purpose, either direct or collateral.
*218 Much, may be said in favor of the propositions stated ; but, we think, all things considered, that the better reasons are against, and will endeavor to state some of them.
The proceeding is peculiar to this state, there not being, so far as we are aware, any similiar statute elsewhere. It is, besides, anomalous in many respects. That the entry is not a judgment in the general sense of our statute, is clear by reference to section' 5310: ‘ £A judgment is the final determination of the rights of the parties in action.” There is no action, nor are there adversary parties. Hence there cannot be the determination of rights in the sense of this section.
If the entry is a judgment at all, it is a judgment inrem. Not that it brings within the grasp of the law property, and provides for its condemnation ; for such result cannot follow. But, viewed in the light of the statute, it bears resemblance to those proceedings in rem, which fix the status of a person, as in lunacy or insolvency proceedings under our statute, or bankruptcy proceedings under the United States statute, for apparently its effect is to fix the status of the one designated as heir at law, by declaring that he ma3r, standing in that relation, inherit the same as would a child born in lawful wedlock, and that the record is to be prima fade evidence of the fact stated therein, and conclusive unless impeached for fraud or undue influence; thus giving lasting effect to the action taken, and making it, save when attacked as above stated, conclusive against the world with respect to the particular matter declared. It is true, also, that the judge is authorized to make the entry only upon finding certain facts to exist, viz: that the declarant is of *219 sound mind and memory and free from restraint. But while there are these apparent resemblances, we think the analogy is not complete, for the elements of notice and hearing are lacking. The policy of our law makes these pre-requisites necessary before final action by a court prejudicial to individual rights, either of person or property. The appointment of guardians for minors seems to be an exception to this rule, but that the general policy is as stated, admits of no question. Sometimes the notice is by publication, sometimes by a more direct process ; but notice of some kind is required, and the rule is emphasized by numerous adjudications; so that it is fair to conclude that, within the policy of our law, notice, and such hearing as that the court may be called upon to consider and determine conflicting claims, are essential pre-requisites of a judgment in rem, as well as in personam, and it would seem to follow that if the lawmakers, having this policy in- mind, had intended to set on foot a proceeding which was to result in a judgment, they would not have failed to make some provision for notice and hearing. A reason for the absence of such provision is found by a consideration of the scope of the statute. It is a method of perpetuating the desire of the declarant. He, alone, is to be heard. No provision even for securing the attendance of witnesses is made. The appearance of two disinterested persons, as well as that of the declarant, is wholly voluntary. So that, if a proceeding to which there is and can be but one party can be said to be ex parte, then this is most essentially ex parte. In any view provision for notice would seem incongruous. The next of kin, .if anybody, would be entitled to it, and yet notice *220 to them would appear to be as unnecessary and inappropriate as would notice of intention to make a will.
If the entry is not a judgment, then the principal support for the plaintiffs’ contention fails, for there would seem to be no reason why it might not as well be ordered and made by a judge as by a court, and if by a judge then his action-at chambers, though away from the county seat, would seem not open to serious question. And what is there in the proceeding- which requires that it be transacted in open court? No one has the ear of the court save the declarant; no witness is to be called to testify; no objection from any source is in order; no exception; no appeal. The declarant only has a present legal interest in the matter. While he lives he has no heir, as no one can claim a vested right in that which is merely presumptive. iSTor is there any immediate effect upon property, for one may make the declaration who has no property, and, after the declaration is made, any property, whether then possessed or acquired afterwards, may be disposed of by deed, by gift, or by will, with the same freedom and to the same effect as though the declaration had net been made. The action of the judgé in the finding which he makes, is said to be a judicial act. It is so in the same sense that the taking the acknowledgement of a deed or other legal document requiring an acknowledgment, is judicial. That is, it is quasi judicial. There, too, the officer must be satisfied that the acknowledgment is freely made, and his certificate to that effect is conclusive evidence of it in the absence of fraud. Baldwin v. Snowden, 11 Ohio St., 203.
*221 Nor must we fail to give proper effect to the language of the statute which in terms devolves these duties on the probate judge, the probate court being nowhere mentioned. Counsel for plaintiff, with much confidence and some plausibility, urge that this fact is of no significance, because, in many probate acts the terms probate judge and court are used interchangeably, as convertible terms, often incorrectly, and special attention is called to the chapter on appropriation of property and that relating to insolvent debtors. There is some force in this, but it is not, we submit, sufficient to overcome the natural and legal import of the terms used in this act. In the other acts there is no difficulty in determining just what the language means by resort to the context and the general subject-matter, for it .is manifest that the machinery of a court is set in motion, involving complaint, process, appearance, hearing, trial, judgment, or verdict and judgment, exceptions, appeal, etc. The statutes referred to include many sections, and afford a . system of procedure by which the claims of adverse parties ' are to be brought before the court and their rights adjudicated, the termination being a final judgment. Here we have one section, an independent act, having for its object one singlé purpose, not calling necessarily for the exercise of the functions of a court, but reasonably within the functions of a judge, and containing no interchange of terms, but a designation of judge only, in each instance. It would seem reasonable to conclude that the law makers used the term probate judge intelligently, and with full understanding of its exact meaning. They might have named the pro *222 bate court; they ' did name the probate judge. Nor is the meaning rendered doubtful by the fact that the entry is to be made upon the journal, and that a record is -to be made. This is* familiar practice. All entries required to be made of action by the judge, at chambers, are made upon the court journal. The journal of the court is the journal of the judge as well; he- has no other. The complete record simply embraces a copy of the journal entry and of the declaration, and-is followed by an index. All which concerns the convenience of the matter; not its legal effect. A complete record of deeds and mortgages, and some leases, is by statute required to be made, with an index, direct and reverse, and a copy of such record, certified by the recorder, is made evidence, but it has not been supposed that the fact of making a complete record implies that the recorder, in performing such duties, is exercising the functions of a. court.
Then, too, the construction contended for by plaintiffs restrains the beneficial effects of the act. It limits its operation to such persons as may be physically able to appear personally at the office of the probate court at the county seat, and exclude all such as cannot. No reason is apparent why this exclusive policy should be favored. Impartiality and fairness would seem to require that all persons answering the description who desire to avail themselves of the statute should have the opportunity, and this consideration doubtless was present at the time of its enactment, and presumably had potent effect in shaping the phraseology of the act.
- A point advanced, though not argued, is that the act is unconstitutional. It. rests, we suppose, *223 ■upon the assumption that rights of parties next of kin to the declarant may be taken away without notice. This is answered by the proposition heretofore suggested that no vested rights do or can exist at the time of the proceeding. And as to mere presumptive rights it is clearly within the competency of the general assembly to modify, amend or repeal statutory provisions regulating descents and distributions at any time ; and it is equally competent to reach such result by indirection as by the short cut of a direct repeal.
But even if this entry were held to be a judgment it is not easy to see how these plaintiffs can have a standing to attack it. The record is valid on its face, and, by force of the statute, save as to fraud, _ imports absolute verity. The ancestor of these plaintiffs invoked the action taken, and surely he could not be heard to question its validity on the ground that the acknowledgment was had away from the office of the court. Courts are not ordinarily open for the purpose of setting aside action taken and entries made on the motion of the partv who has procured them. And if the ancestor would be estopped to ask a vacation of this entrj?- on the ground stated, how ca.n those, who stand as privies in blood and acquire their -fights, if any they have, directly from him, have any better right to be heard?
It is complained that on the trial of the case in the circuit court error intervened to the prejudice of plaintiffs by the order limiting, the number of witnesses as to the mental condition of the deceased to six on each side, and refusing to listen to cumulative testimony on the same facts and questions by thirteen other persons. The record does not disclose error. Ordinarily, the matter *224 is within the discretion of the trial court, and it does not appear affirmatively that the court abused its discretion in this ruling.
Judgments affirmed.